Opinion filed December 1, 2011



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00232-CV

_____

## HELMERICH & PAYNE INTERNATIONAL DRILLING CO., Appellant

## V.

## BOPCO, L.P., Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CV-46938**

**O P I N I O N**

This case involves the interpretation of a daywork drilling contract. The parties disagree as to the date that the 1,095-day term of the contract commenced. Upon construing the contract, the trial court rendered summary judgment granting declaratory relief to appellee, BOPCO, L.P.[1] The trial court declared, among other things, that the 1,095-day contract term commenced on March 20, 2007. Appellant, Helmerich & Payne International Drilling Co. (H&P), appeals from the trial court's summary judgment. We affirm.

---

[1]BEPCO Operating Company was a party to the contract. BOPCO is the successor-in-interest to BEPCO.

*Background Facts*

In late 2005, BOPCO needed a drilling rig for the purpose of drilling wells in Colorado. H&P agreed that it would manufacture a drilling rig and then use that rig to drill wells for BOPCO. In January 2006, representatives from BOPCO and H&P executed a daywork drilling contract. The parties used a standard fill-in-the-blank form contract prepared by the International Association of Drilling Contractors. The parties deleted parts of the form contract, and they made some additions to the contract.

Under the contract, BOPCO was the "Operator," and H&P was the "Contractor." The contract provided that BOPCO had engaged H&P as an independent contractor to drill various wells on a daywork basis. Paragraph 2 of the contract provided as follows:

> 2. COMMENCEMENT DATE:
> Contractor agrees to use reasonable efforts to commence operations for the drilling of the well ~~by~~ on or about the <u>20th</u> day of <u>March</u>, 20<u>07</u>.

As shown above, the parties struck the word "by" from Paragraph 2 of the form contract. The parties added the "on or about" language and inserted the March 20, 2007 date in Paragraph 2. Paragraph 6 of the contract provided as follows:

> 6. TERM:
> 6.1 Duration of Contract: This Contract shall remain in full force and effect ~~until drilling operations are completed on the well or wells specified in Paragraph 1 above, or~~ for a term of <u>1095-days</u>, *or at rig release of any well being drilled by operator on the 1095th day, whichever is later*, commencing on the date specified in Paragraph 2 above (subject to 27.7 Early Termination).

As shown above, the parties struck the language in the contract beginning with the word "until" and ending with the word "or." The parties added the term "1095-days" in the blank. They also added, in handwriting, the words that are italicized above.

In Paragraph 4 of the contract, BOPCO agreed to pay H&P a day rate of $23,300 per day for work performed by H&P under the contract. By later agreement, the day rate was changed to $23,800 per day. The contract contained an early termination provision. Paragraph 27.7 of the contract provided, in relevant part, as follows:

> 27.7 <u>Early Termination Provision</u>:
> Operator shall have the right to terminate the Contract at any time after the date of execution of the Contract by both parties and prior to the expiration of the first 1,095 calendar days thereafter (the "Early Termination") by giving thirty (30) days' prior written notice to the Contractor, conditional upon Operator paying Contractor the Early Termination amount and other amounts specified below.

2

In the event of Early Termination, Operator shall pay to the Contractor an Early Termination Amount equal to the number of days remaining in the 1,095 calendar day term multiplied by $14,000. Operator shall pay in one payment (within thirty (30) calendar days of the date of Contractor's invoice) such Early Termination amount. The Early Termination amount is in addition to all other amounts due and owing under the Contract prior to the date of such Early Termination, including without limitation the mobilization and demobilization payments.

By later agreement, the parties increased the early termination rate to $14,500 per day.

The parties added a typewritten liquidated damages provision to the contract. Paragraph 27.15 of the contract provided as follows:

27.15 Notwithstanding the foregoing, in the event Commencement of Operations has not occurred by March 20, 2007 for reasons wholly within Contractor's reasonable control, Contractor will pay Operator, as liquidated damages for such delay and not as a penalty, a sum equal to $2,500 per day (the "Delay Payment") for each day after April 20, 2007 that Commencement of Operations has not occurred, up to a maximum of $225,000. Such payment will be Operator's sole remedy and Contractor will have no other liability for any delay in the Commencement of Operations.

H&P experienced delays in manufacturing the rig and, therefore, did not commence drilling operations under the contract until June 4, 2007. As required by Paragraph 27.15 of the contract, H&P paid liquidated damages to BOPCO in the amount of $2,500 per day covering the forty-five day period from April 20, 2007 until June 4, 2007. The liquidated damages totaled $112,500. When H&P commenced operations under the contract, BOPCO began paying H&P the day rate of $23,300 per day for use of the rig.

In 2009, BOPCO exercised its right to terminate the contract early. By letter dated April 21, 2009, BOPCO provided H&P thirty-days' written notice of its intent to terminate the contract, "effective May 21, 2009 or at rig release from the [well], whichever occurs later." In the letter, BOPCO's representative stated that, "[a]ccording to section 6.1 and section 2 of the contract, the term of the agreement is 1095 days from March 20, 2007 and thus an early termination payment of approximately $4,228,000 (adjusted to final rig release date if after 5/21/09) will be payable by BOPCO, L.P to H&P within 30 days of receipt of an invoice." BOPCO's representative requested H&P to send such an invoice. In response, H&P took the position that, based on the applicable provisions of the contract, the 1,095-day contract term began on the date that it commenced operations under the contract. Therefore, in an e-mail to BOPCO, a representative of H&P stated that "[t]he days remaining in the term, for purposes of

3

Paragraph 27.7, must be calculated from commencement, which was on or after delivery of the rig on June 4, 2007."

The rig release occurred on May 30, 2009; therefore, the contract was terminated on that date. H&P calculated that 368.67 days remained on the 1,095-day contract term when BOPCO terminated the contract. Therefore, H&P billed BOPCO as follows: "368.67 Days x $14,500 Early Termination per day = $5,345,715." BOPCO believed that 292.25 days remained on the 1,095-day contract term when it terminated the contract. Therefore, it paid H&P the amount of $4,091,500 (292.25 days x $14,000). After this case was filed in the trial court, BOPCO paid H&P the additional sum of $146,125 ($500 x 292.25) because the parties had agreed to increase the early termination rate to $14,500 per day.

BOPCO filed this cause against H&P. BOPCO sought a declaratory judgment from the trial court that the 1,095-day contract term commenced on March 20, 2007. BOPCO also sought to recover attorney's fees. H&P filed a counterclaim against BOPCO for breach of contract. H&P's breach-of-contract claim was based on its contention that the 1,095-day contract term commenced on June 4, 2007. H&P also sought to recover attorney's fees. Both parties moved for summary judgment on their claims. Following a hearing, the trial court granted BOPCO's motion and denied H&P's motion. The trial court awarded BOPCO the following declaratory relief in an amended final summary judgment: that the 1,095-day term commenced on March 20, 2007; that BOPCO properly exercised its right to early termination of the contract under Paragraph 27.7 by giving thirty-days' written notice to H&P and paying the proper early termination amount of $4,237,625 to H&P; and that BOPCO had fully paid H&P the amount due for BOPCO's early termination of the contract. The trial court also awarded reasonable and necessary attorney's fees to BOPCO in the amount of $100,000 and awarded additional attorney's fees to BOPCO conditioned on the pursuit and outcome of appeals. The trial court entered a take-nothing judgment against H&P on its claims. H&P appeals from the trial court's amended final summary judgment.

*Issues on Appeal*

H&P presents two issues for review. In its first issue, H&P contends that the trial court erred by granting BOPCO's motion for summary judgment. In its second issue, H&P contends that the trial court erred by denying its motion for summary judgment.

4

*Standard of Review*

Both parties filed traditional motions for summary judgment under Rule 166a of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 166a. We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides and determine all questions presented. *Valence Operating*, 164 S.W.3d at 661; *Meadows v. Midland Super Block Joint Venture*, 255 S.W.3d 739, 742 (Tex. App.—Eastland 2008, no pet.). If we determine that the trial court erred, we must render the judgment that the trial court should have rendered. *Valence Operating*, 164 S.W.3d at 661.

*Analysis*

Paragraph 18 of the contract provided that it was to be construed and interpreted in accordance with Oklahoma law. The parties agree that Oklahoma substantive law applies to their dispute, and we will apply that law here. We note that Oklahoma's rules of contract construction are very similar to Texas's rules of contract construction. In both states, a court's primary concern when interpreting a contract is to ascertain and give effect to the parties' intent as that intent is expressed in the contract. OKLA. STAT. ANN. tit. 15, §§ 152, 155; *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006).

The parties disagree as to the date that the 1,095-day contract term commenced. BOPCO argues, as the trial court declared, that the 1,095-day term commenced on March 20, 2007. H&P argues that the 1,095-day term commenced on June 4, 2007. Both parties rely on rules of contract construction in arguing their respective positions. Neither party claims that the contract is ambiguous. Under Oklahoma law, if the terms of a contract are unambiguous, clear, and consistent, they are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated. *S. Corrs. Sys., Inc. v. Union City Pub. Sch.*, 64 P.3d 1083, 1088 (Okla. 2002). Contractual intent is determined from the entire agreement. *Id.* at 1088-89. Where a contract is complete and unambiguous, its language is the only legitimate evidence of what the parties intended. *Id.* at 1089.

Paragraph 2 of the contract governed commencement of operations. Pursuant to Paragraph 2, H&P agreed "to use reasonable efforts to commence operations for the drilling of the well on or about the 20th day of March, 2007." Paragraph 6 of the contract governed the

term of the contract. Paragraph 6.1 provided, and the parties agree, that the 1,095-day contract term was to commence "on the date specified in Paragraph 2."

BOPCO contends that the date specified in Paragraph 2 was March 20, 2007, and that, therefore, the parties intended the 1,095-day term to commence on that date. In response to BOPCO's argument, H&P contends that, if the parties had intended for the 1,095-day term to commence on March 20, 2007, they would have put that date in Paragraph 6.1. By using the words "date specified in Paragraph 2" in Paragraph 6.1, H&P asserts that the parties incorporated the entirety of Paragraph 2 into Paragraph 6.1, as opposed to incorporating just the March 20, 2007 date from Paragraph 2. H&P contends that "[t]he purpose for incorporating Paragraph 2 into Paragraph 6.1 was to make the 1,095-day term of the contract correspond with the commencement of operations under the contract" and that, therefore, the parties intended the 1,095-day term to commence when drilling operations commenced under the contract.

In response to H&P's argument, BOPCO asserts that the parties did not incorporate the entirety of Paragraph 2 into Paragraph 6.1. To support this assertion, BOPCO contends that nothing in the contract supports the proposition that the parties incorporated the entirety of Paragraph 2 into Paragraph 6.1. BOPCO notes that the parties neither stated in Paragraph 6.1 that the 1,095-day term would be "commencing as per Paragraph 2" nor used language in Paragraph 6.1 incorporating "the provisions of Paragraph 2." Instead, as BOPCO states in its brief, the parties stated in Paragraph 6.1 that the 1,095-day term was to commence "on the date specified in Paragraph 2."

In construing the contract, we must accept the contract language in its plain, ordinary, and popular sense. *Haworth v. Jantzen*, 172 P.3d 193, 197 (Okla. 2006). This rule of contract construction supports BOPCO's interpretation of the contract. In Paragraph 6.1, the parties agreed that the contract would be "commencing on the date specified in Paragraph 2." "Specified" means "name[d] or state[d] explicitly or in detail." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1198 (11th ed. 2004). "Explicitly" means "fully revealed or expressed without vagueness, implication, or ambiguity." *Id.* at 441. Thus, the plain and ordinary meaning of "date specified" is a date that is named or stated explicitly or in detail. The only date that was stated explicitly in Paragraph 2 was March 20, 2007. Based on the plain and ordinary meaning of the language used by the parties in Paragraph 6.1, we conclude that they intended the 1,095-day contract term to commence on March 20, 2007, and that they did not intend to incorporate the entirety of Paragraph 2 into Paragraph 6.1.

6

Additionally, we note that the parties did not state in Paragraph 6.1 that the 1,095-day contract term would commence on the date that H&P commenced operations under the contract. The parties could have included such language in Paragraph 6.1 had they intended the 1,095-day contract term to commence on the date that operations commenced under the contract. We also note that, under H&P's interpretation of the contract, at the time the parties entered the contract, there would have been uncertainty as to the date the 1,095-day contract term would commence. Under its interpretation, H&P could have delayed commencement of operations for a year, or even more, and the 1,095-day contract term would not have commenced until the date that H&P commenced operations. We do not believe that the parties intended such a result.

H&P contends that BOPCO's interpretation of the contract renders the words "on or about" in Paragraph 2 meaningless. In Paragraph 2.1, H&P agreed to use reasonable efforts to commence operations on or about March 20, 2007. H&P asserts that, by using the words "on or about," the parties emphasized that March 20, 2007, was not a required date to commence operations but only a "target" date to commence them. Based on this assertion, H&P argues that the "date specified" in Paragraph 2 for commencing operations was a date estimated by the parties to be "on or about" March 20, 2007. H&P contends that BOPCO's interpretation – that March 20, 2007, was the "date specified" in Paragraph 2 – effectively eliminates the "on or about" language.

However, BOPCO's interpretation does not render the words "on or about" meaningless. A distinction exists between the date that the 1,095-day contract term would commence and the date that H&P would commence operations under the contract. H&P's contention fails to recognize this distinction. Paragraph 2.1 required H&P to use reasonable efforts to commence operations "on or about" March 20, 2007. BOPCO's interpretation does not change this requirement. We have concluded above that the parties did not incorporate the entirety of Paragraph 2 into Paragraph 6.1. Rather, they incorporated only the "date specified" in Paragraph 2 into Paragraph 6.1, which was March 20, 2007. The "on or about" language applied to H&P's obligation to commence operations under the contract; it did not apply to the date that the contract term would commence.

However, even if "on or about March 20, 2007" was the "date specified" in Paragraph 2, we would conclude that the trial court's interpretation of the contract was correct. H&P relies on *Hopkins v. National Bank of Norman*, 188 P. 667 (Okla. 1920), to support its contention that March 20, 2007, was not a set date for commencing the contract term. *Hopkins* involved a suit

7

to set aside an earlier judgment. 188 P. 667. In *Hopkins*, the plaintiff alleged that Ned Hopkins died "on or about January 4, 1912." *Id.* at 668. However, the record showed that Ned Hopkins did not die until sometime after January 4, 1912. He had been personally served with process in the earlier suit on January 5, 1912. The defendants contended that the plaintiff's allegation that Ned Hopkins died on or about January 4, 1912, was contradicted by actual facts that were disclosed by the record and that, therefore, the trial court had not erred in sustaining their demurrer to the plaintiff's petition. *Id.* The Oklahoma Supreme Court disagreed with the defendants' contention. The court explained the effect of the plaintiff's allegation that Ned Hopkins died "on or about January 4, 1912." In so doing, the court quoted Black's Law Dictionary for the proposition that "on or about" is "[a] phrase used in reciting the date of an occurrence or conveyance, to escape the necessity of being bound by the statement of an exact date." *Id.* Based on the plaintiff's use of "on or about" language, the Oklahoma Supreme Court held that the plaintiff was not bound by the specific date of January 4, 1912, that was alleged in her petition and that, therefore, the trial court had erred in dismissing the suit. *Id.*

*Hopkins* did not hold that the words "on or about" could be used to define an indefinite or uncertain date. Nor did it hold that the words "on or about" could refer to a date that was not in close proximity to the specific date alleged. The current version of Black's Law Dictionary defines "on or about" as follows:

> Approximately; at or around the time specified. This language is used in pleading to prevent a variance between the pleading and the proof, usu. when there is any uncertainty about the exact date of a pivotal event. When used in nonpleading contexts, the phrase is mere jargon.

BLACK'S LAW DICTIONARY 1198 (9th ed. 2009). Based on this definition, even assuming that "on or about March 20, 2007," was the "date specified" in Paragraph 2, we would conclude that the 1,095-day term of the contract commenced on March 20, 2007.

H&P also contends that interpreting the 1,095-day contract term to commence on March 20, 2007, conflicts with Paragraph 27.15 for two reasons. We have quoted Paragraph 27.15 above. It provided that H&P would pay liquidated damages, referred to as a "Delay Payment," to BOPCO in the amount of $2,500 per day for each day after April 20, 2007, that H&P had not commenced operations under the contract, provided that the delay in commencing operations was caused by reasons wholly within H&P's reasonable control. Paragraph 27.15 limited H&P's liability for liquidated damages to a maximum amount of $225,000.

Paragraph 27.15 also provided that the payment of liquidated damages to BOPCO would be BOPCO's sole remedy and that H&P would have no other liability for a delay in commencing operations.

First, H&P contends that the trial court's interpretation of the contract conflicts with Paragraph 27.15 because Paragraph 27.15 shows that March 20, 2007, was only a "target" date for commencing operations and that, therefore, the parties did not intend the contract term to commence on March 20, 2007. Under Paragraph 27.15, H&P's obligation to pay liquidated damages in the amount of $2,500 per day did not begin until the day after April 20, 2007. H&P states in its brief that "[t]he April 20 date again reinforces the fact that the parties did not intend to start anything on March 20, 2007; not even the daily payments for missing the target date." However, nothing in Paragraph 27.15 referred to the date that the 1,095-day term of the contract would commence. Paragraph 27.15 contained no language that could be construed as establishing or modifying the date that the contract term would commence. Paragraph 27.15 addressed H&P's obligation to commence operations under the contract and required H&P to pay liquidated damages to BOPCO if H&P failed to commence operations by April 20, 2007. Thus, Paragraph 27.15 provided to H&P a 30-day lag period after March 20, 2007, before it had to pay damages. Providing H&P with the lag period is not inconsistent with the intent to have the contract term commence on March 20, 2007. The language used in Paragraph 27.15 does not support H&P's contention that the parties did not intend the contract term to commence on March 20, 2007.

Second, H&P contends that the trial court's interpretation of the contract conflicts with the "sole remedy" aspect of Paragraph 27.15. H&P did not commence operations under the contract until June 4, 2007. On the same day, BOPCO began paying H&P the day rate of $23,300 per day. Based on H&P's delay in commencing operations, it paid BOPCO liquidated damages as required by Paragraph 27.15 in the amount of $112,500. Therefore, H&P contends that BOPCO was afforded its "sole remedy" under Paragraph 27.15. H&P asserts that the trial court's declaration that the 1,095-day contract term commenced on March 20, 2007, as opposed to June 4, 2007, as urged by H&P, afforded BOPCO two separate remedies as a result of H&P's delay in commencing operations: (1) "[liquidated damages] under Paragraph 27.15" and (2) "over $1 million in early termination payments that BOPCO avoided paying by reinterpreting the commencement language."

9

Contrary to H&P's contention, the trial court's interpretation did not give BOPCO an additional remedy. In Paragraph 27.15, the parties addressed H&P's contractual obligation to commence operations. Paragraph 27.15 limited H&P's liability to BOPCO for H&P's delays in commencing operations, and it provided that H&P's payment of liquidated damages would be BOPCO's "sole remedy" for H&P's delays in commencing operations. In Paragraph 27.15, the parties did not address BOPCO's obligations to H&P under the contract, such as the obligation to pay the day rate or the early termination fee. For example, in Paragraph 27.15, the parties did not state that BOPCO had the obligation to pay the day rate or the early termination fee for a total of 1,095 days after H&P commenced operations under the contract. While the trial court's interpretation of the contract affected the length of time that BOPCO had to pay the early termination fee, the interpretation did not conflict with Paragraph 27.15 because Paragraph 27.15 had nothing to do with BOPCO's contractual obligations to H&P.

The trial court correctly declared that the 1,095-day contract term commenced on March 20, 2007. Therefore, under the well-known standards of review that we have set forth, the trial court did not err by granting BOPCO's motion for summary judgment and denying H&P's motion for summary judgment. H&P's issues on appeal are overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


December 1, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[2]

---

[2]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.

10